NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2899-17T4

KATHLEEN J. DELANOY,

       Plaintiff-Appellant,

v.

TOWNSHIP OF OCEAN,
ANDREW BRANNEN,
STEVEN PETERS, NEIL
INGENITO, WILLIAM
LARKIN, CHRISTOPHER
SICILIANO, W. MICHAEL
EVANS, WILLIAM GAROFALO,
and DONNA SCHEPIGA,

       Defendants-Respondents.

_____

**APPROVED FOR PUBLICATION**

**January 3, 2020**

**APPELLATE DIVISION**

Argued October 21, 2019 – Decided January 3, 2020

Before Judges Sabatino, Sumners and Geiger.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-4441-14.

Donald Francis Burke argued the cause for appellant (Law Office of Donald F. Burke, attorneys; Donald Francis Burke and Donald Francis Burke, Jr., on the briefs).

Lori A. Dvorak argued the cause for respondents (Law Offices of Dvorak & Associates, LLC, attorneys; Lori

A. Dvorak, of counsel; Marc D. Mory and Martin J. Arbus, on the briefs).

Thaddeus P. Mikulski, Jr., argued the cause for amicus curiae National Employment Lawyers Association of New Jersey.

Michelle S. Silverman argued the cause for amicus curiae The Academy of New Jersey Management Attorneys, Inc. (Morgan, Lewis & Bockius LLP, attorneys; Richard G. Rosenblatt and Michelle S. Silverman, on the brief).

Benjamin Folkman argued the cause for amicus curiae The New Jersey Association for Justice (Folkman Law Offices, PC, attorneys; Eve R. Keller, Benjamin Folkman, Sarah Slachetka, Paul C. Jensen, Jr., and Lauren M. Law, on the brief).

Farng-Yi D. Foo, Deputy Attorney General, argued the cause for amicus curiae The Office of the Attorney General (Gurbir S. Grewal, Attorney General, attorney; Jason W. Rockwell, Assistant Attorney General, of counsel; Farng-Yi D. Foo, on the brief).

The opinion of the court was delivered by

SABATINO, P.J.A.D.

This appeal stems from a pregnancy discrimination suit brought by a female police officer against her employer, Ocean Township, and various Ocean Township officials. Plaintiff contends defendants violated the New Jersey Pregnant Workers Fairness Act ("PWFA"), a statute that has yet to be construed in a published opinion. The PWFA amended the New Jersey Law Against Discrimination ("LAD"), effective January 17, 2014, to expressly prohibit

2

pregnancy-based discrimination in employment and in other contexts. Among other things, the statute obligates employers, subject to an undue hardship exception, to provide reasonable accommodations in the workplace to pregnant women upon their request, and to not penalize such women because of their pregnant status. N.J.S.A. 10:5-12(s).

When plaintiff found out she was pregnant with her second child, she informed her supervisors her doctor recommended she be taken off patrol. She asked to be transferred to a "light-duty" or less strenuous position within the Police Department. Plaintiff was consequently assigned to non-patrol duty, pursuant to the Department's "Maternity Assignment Standard Operating Procedure" ("Maternity SOP"). That policy allows pregnant officers to work a maternity assignment, but on the condition that the officer use all her accumulated paid leave time (e.g., vacation, personal, and holiday time) before going on that different assignment. The Maternity SOP also differs from the Department's policy providing light-duty assignments for nonpregnant injured officers because only the latter policy gives the Police Chief the authority to waive the loss-of-leave-time condition.

Plaintiff contends that the Department's Maternity SOP discriminates against pregnant employees because it is less favorable than the light-duty assignment policy for nonpregnant officers. She further argues that requiring

3

her to deplete her accumulated leave time as a condition of her maternity assignment violates the PWFA, because employers are obligated under the statute to "reasonably" accommodate pregnant employees. She further argues this condition improperly penalized her in violation of the statute.

The trial court granted summary judgment in favor of defendants, finding that defendants' maternity assignment policy did not violate what it perceived as the PWFA's "equal treatment" mandate. The court did not reach the issues of reasonable accommodation, undue hardship, or penalty. The court also denied plaintiff's cross-motion for partial summary judgment on her facial challenge.

For the reasons that follow, we vacate the entry of summary judgment in favor of defendants. We hold the Department's maternity assignment policy, as written, unlawfully discriminates against pregnant employees as compared to nonpregnant employees who can seek and potentially obtain a waiver from the Police Chief. Such nonequal treatment violates the PWFA. Consequently, we uphold plaintiff's facial challenge to those uneven policies and direct the trial court to grant her discrete requests for declaratory and injunctive relief, leaving other remedial issues to the trial court.

In addition, we vacate summary judgment in defendants' favor with respect to the accommodation issues. We do so because there are genuine issues of material fact for a jury to resolve concerning the reasonableness of the SOP's

4

loss-of-leave-time condition and whether that condition is so harsh as to comprise an impermissible penalty. The jury further must evaluate the employer's defense of undue hardship.

I.

Plaintiff Kathleen J. Delanoy began working as a law enforcement officer in the Ocean Township Police Department in about January 2003. By the time of the motion proceedings in this case, Delanoy was one of three female police officers in a staff of over fifty patrol officers.

Plaintiff's First Pregnancy and Her Employer's Policies

In or around March 2011, Delanoy discovered she was pregnant with her first child, and was due in November 2011. At the time, Ocean Township did not have a formal maternity leave or light-duty policy for police officers.

In July 2011, the Township implemented two new policies: the Maternity SOP and the Light-Duty/Modified Duty Standard Operating Procedure ("Light-Duty SOP").[1] As we will discuss in more detail, both policies require a police officer to deplete up to all of his or her accumulated paid leave time as a condition of receiving light-duty or a maternity assignment. Notably, however, the Light-Duty SOP, but not the Maternity SOP, grants the Chief of Police

---

[1] In September 2016, the Department revised the two SOPs at issue "in an effort to address [p]laintiff's concerns regarding the prior SOPs." Those revisions do not eliminate plaintiff's claim in this case.

5

discretion to waive the requirement that an officer use up his or her accumulated time as a condition of the changed assignment.

Additionally, the two policies differ as to how the return-to-duty date is set. Under the Light-Duty SOP, the return-to-duty date is set by the employee's treating doctor, whereas the Maternity SOP return-to-duty date is set according to a formula, but no more than forty-five calendar days past the infant's expected due date.

On July 11, 2011, plaintiff informed Antonio Amodio, who was then the Police Chief, that her doctor instructed her she needed to work a maternity assignment for the remainder of her pregnancy. Seven days later, on July 18, 2011, plaintiff began her maternity assignment under the Maternity SOP. Plaintiff worked in the maternity assignment until her first child was born in November 2011.

The First Lawsuit

In January 2013, plaintiff filed her first lawsuit (Docket Number MON-L-322-13) against the Township and other defendants in the Law Division, alleging the Township and former Chief Amodio discriminated against her on the basis of her first pregnancy by implementing the two non-identical SOPs to her detriment. Defendants removed that case to federal court.

6

Plaintiff's Second Pregnancy

While her federal litigation was pending, on or around September 19, 2014, plaintiff advised her supervisors of her second pregnancy. By that point, the Light-Duty and Maternity SOPs adopted in 2011 were fully in effect.

The Present Lawsuit

In November 2014, plaintiff filed the present pregnancy discrimination lawsuit in the Law Division against the Township of Ocean; the current Chief of Police, Steven Peters; the five members of the Ocean Township Council; and Township Manager Andrew Brannen. Among other things, plaintiff sought a declaratory judgment, finding that the Township's policies violated the PWFA and its provisions within the LAD, N.J.S.A. 10:5-12. Plaintiff also requested an injunction prohibiting defendants "from effectuating policies which are discriminatory to pregnant police officers." Plaintiff further sought damages and counsel fees.

When plaintiff learned that she would be forced by the Township to take an early maternity leave, she filed an order to show cause for declaratory and injunctive relief. The trial court denied her request. Plaintiff unsuccessfully sought interlocutory review from this court and the Supreme Court. Meanwhile, plaintiff accepted an offer of judgment to resolve the federal litigation.

Plaintiff then moved to enter default against defendants in this lawsuit. Defendants cross-moved to dismiss plaintiff's complaint pursuant to Rule 4:6-2(e). Defendants argued that plaintiff's claims were barred on various procedural grounds, including the statute of limitations, the entire controversy doctrine, collateral estoppel, and res judicata.

The trial court granted in part and denied in part defendants' dismissal motion. The motion judge[2] found that, to the extent plaintiff's second lawsuit seeks to recover damages from the Township for discrimination related to her first pregnancy, such claims were barred by the entire controversy doctrine. Plaintiff's other claims were allowed to proceed. The judge denied plaintiff's motion to enter default against defendants.

Plaintiff's Maternity Assignment

Plaintiff's projected due date in her second pregnancy was March 17, 2015, which ultimately proved to be the child's actual date of birth. Plaintiff submitted a doctor's note to her employer on September 19, 2014, advising that she was pregnant and requesting that she be placed on light-duty from September 22, 2014, until the end of her pregnancy.[3] As Chief Peters certified, plaintiff

---

[2] A different judge in the vicinage subsequently ruled on the summary judgment motions that are now before us.

[3] We have not been asked to address, and do not consider in our analysis, plaintiff's eligibility for unpaid family leave time under the federal and state

8

was "temporarily reassigned to [a] maternity assignment" on September 22, 2014.

According to the Township, the two SOPs created new positions for officers requesting light-duty or maternity assignments. As then-Township manager Andrew Brannen explained in his deposition, the SOPs "guarantee[ed] a work assignment for anybody on maternity leave or anybody on light duty." By contrast, before the SOPs were promulgated in 2011, whether someone was given light-duty depended on whether such an assignment existed and was available.

Plaintiff worked in the maternity assignment for several months. In accordance with the policy, she was assigned an administrative job in the Department's records department, as well as handling what are known as walk-in reports. As described in plaintiff's deposition, she was assigned the same type of work (e.g., record keeping and handling walk-in reports) that she had been assigned during her first pregnancy. Plaintiff was considered a "primary walk-in officer," which meant that when people would come into the Department to report a crime, accident, or similar incident she would be responsible for meeting with that person and then preparing a report.

---

Family Leave Acts. See 29 U.S.C. §§ 2611 to -2619 (the federal statute); N.J.S.A. 34:11B-1 to -11B-16 (the New Jersey analogue).

9

Plaintiff testified she had problems as the primary walk-in officer because she could not wear her gun when interacting with the people who would walk into the police station.[4] She recounted how the Department once had a mentally unstable person come in as a walk-in, pull the fire alarm, and run out. Two uniformed officers carrying their weapons then chased that person into the parking lot and wrestled him to the ground, but ultimately one of the officers involved in the scuffle was injured and had to retire. Plaintiff stated this previous occurrence made her "absolutely terrified" because she felt vulnerable and unable to defend herself and her unborn child if a walk-in civilian became violent.

Plaintiff's Transition from Maternity Assignment to Maternity Leave

Plaintiff contends she worked the maternity assignment from September 22, 2014, until February 25, 2015, when the Department forced her to go on maternity leave and begin using up her accumulated leave time. The Township disputes that end date, asserting that plaintiff worked the maternity assignment through March 2, 2015, and began her maternity leave the next day on March 3, 2015. Regardless of this discrepancy in the exact end dates, the parties do not

---

[4] Plaintiff agreed that she should not have worn her gun, and in fact did not want to wear a gun, because firing a weapon could expose her unborn child to lead.

10

dispute that plaintiff was forced to use up several of her accumulated leave time days as a condition of her receiving the maternity assignment.

The Loss-of-Leave-Time Condition

It is undisputed that plaintiff went on maternity leave before her second child's expected due date of March 17, 2015. The Maternity SOP specifies that accumulated time needs to be scheduled and used with reference to the officer's "return to duty date"—a date which must be no more than forty-five days past the child's expected due date—and calculated backwards until all of the officer's accumulated time is depleted.

Although the parties do not agree on the precise timeline, in order to obtain her modified assignment plaintiff had to deplete roughly two weeks of accumulated leave time. This requirement is at the heart of the case.

Defendants assert the Maternity SOP is fair because when the Township created the benefit of light/maternity duty positions for officers, it expected the officers to give something up in return (e.g., accumulated time). According to the defendants, the "give and take" of the Maternity Duty and Light-Duty SOP was intended to save money for taxpayers. Defendants allege the SOPs created a temporary clerical position for officers if they needed light/maternity duty. Instead of paying the officers the lower salary of a file clerk, the Township pays them their normal salary during the temporary assignment. Defendants contend

11

it was only fair that the officers gave up accumulated time before getting the benefit of light-duty or maternity duty.

Plaintiff contests the legality of being forced to use up her accumulated leave time. She contends she was medically able and cleared by her physician to continue working her maternity assignment up until her due date. She asserts the SOP's loss-of-leave-time requirement is unlawful under the PWFA.

Motion Practice

After discovery was conducted, the parties filed cross-motions for summary judgment. Following oral argument, the trial court denied plaintiff's motion and entered summary judgment in favor of defendants dismissing all of plaintiff's claims.

In his January 19, 2018 oral ruling, the motion judge found that the two SOPs treated all pregnant and non-pregnant employees essentially the same, by requiring them to forfeit all accumulated earned time before being provided with a different work assignment. Applying what he considered the PWFA's equal treatment mandate, the judge analyzed plaintiff's allegations under both "disparate treatment" and "disparate impact" concepts.

As to disparate treatment, the judge found that plaintiff had failed to present evidence that she had suffered any adverse action. The judge held that being forced to surrender earned time and take early maternity leave did not

12

qualify under the law as an adverse action. The judge also held that plaintiff was required to show defendants acted with discriminatory intent to prove disparate treatment. In this regard, the judge found that "the record is just devoid of the facts which establish that the police defendants and the Township [C]ouncil defendants acted with discriminatory intent, in implementing the maternity SOP."

Additionally, the judge agreed with defendants that the provision in the Light-Duty SOP granting discretion to the Police Chief to waive the loss-of-leave-time condition permissibly applied only to high-ranking superior officers, "who perform administrative functions, or essential functions for the Department, and is not applicable to the plaintiff as a patrol officer."

The motion judge further rejected plaintiff's claims under a disparate impact theory. The judge concluded that because not all pregnant women are equally harmed by the Maternity SOP, the policy "does not create an adverse impact for all members of her protected class." The judge therefore granted summary judgment dismissing plaintiff's statutory claims. The judge also dismissed her other causes of action and denied her own cross-motion for partial summary judgment.

13

II.

The Legislature enacted the PWFA as L. 2013, c. 220, § 2, and made it effective as of January 17, 2014. The statute amends our state's LAD in several places, a number of which are pertinent to this appeal.

Statutory Background and the Young Case

Subject to certain limited exceptions, the PWFA makes it illegal in New Jersey to discriminate against pregnant women in a variety of contexts. With respect to the workplace, the statute strengthens the protections afforded to pregnant employees under federal law through Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e(k).

To some extent, several states, including New Jersey, were prompted to adopt such state-law legislation in response to the decision of the United States Court of Appeals for the Fourth Circuit in Young v. United Parcel Service, 707 F.3d 437, 446 (4th Cir. 2013). In Young, the Fourth Circuit upheld summary judgment dismissing a federal pregnancy discrimination action by a female driver against her employer, a parcel service company, which had fired her after she became unable to lift up to seventy pounds as required by company policy. The Court of Appeals rejected the employee's contention that federal law required her employer to provide her with a reasonable accommodation to relax the lifting requirement. Id. at 451. In reaching that conclusion, the Court of

14

Appeals reasoned the pregnant employee did not have a "disability" within the meaning of Title VII, because her lifting limitations due to her pregnancy were merely temporary and did not significantly restrict her ability to perform major life activities.  Id. at 450.

In March 2015 – coincidentally a few months after New Jersey's passage of the PWFA – the United States Supreme Court reversed in part the Fourth Circuit's decision in Young.  Young v. United Parcel Service, Inc., 575 U.S. 206 (2015).  The Court did so because of evidence that the employer had treated the pregnant plaintiff less favorably than several nonpregnant employees who had similar physical limitations.  Even so, the Supreme Court did not adopt the plaintiff's argument that federal law requires employers, absent proven disparate treatment of pregnant employees, to provide reasonable accommodations that can enable such pregnant workers to continue to work.  Id. at 219-20.

Objectives of the PWFA

In adopting the PWFA, our Legislature expressed in Section 3.1 of the statute several public policy concerns and objectives.  Specifically, the Legislature found and declared:

> a.    That pregnant women are vulnerable to discrimination in the workplace in New Jersey, as indicated in reports that women who request an accommodation that will allow them to maintain a healthy pregnancy, or who need a reasonable accommodation while recovering from childbirth, are

15

being removed from their positions, placed on unpaid leave, or fired;

 b. It is <u>the intent of the Legislature to combat this form of discrimination by requiring employers to provide reasonable accommodations to pregnant women</u> and those who suffer medical conditions related to pregnancy and childbirth, such as bathroom breaks, breaks for increased water intake, periodic rest, assistance with manual labor, job restructuring or modified work schedules, and temporary transfers to less strenuous or hazardous work; and

 c. It is <u>not the intent of the Legislature to require such accommodations if their provision would cause an undue hardship</u> in the conduct of an employer's business.

[N.J.S.A. 10:5-3.1 (emphasis added).]

<u>Four Components</u>

The PWFA essentially has four distinct and important components: (1) language that prohibits unequal treatment of pregnant women in a variety of contexts, including the workplace; (2) provisions that require employers to provide pregnant workers, upon request, with reasonable accommodations that can enable them to perform their essential job functions; (3) a mandate that the employer must not "penalize" a pregnant worker for requesting or receiving the accommodation, and (4) an undue hardship exception to the reasonable accommodation provision.

16

### 1. The PWFA's "Equal Treatment" Mandate

The first statutory objective of eradicating unequal treatment was accomplished by inserting the word "pregnancy" (or a variant of that term) into subsections (a) (concerning employment); (b) (concerning labor organizations); (c) (concerning hiring practices and job postings); (f) (concerning public accommodations); (h), (k), and (o) (concerning real estate transactions and leases); (i) (concerning banking and credit lending); (l) (concerning contracts); and (m) (concerning the sale of goods and services). As we shall discuss, subsection (a), prohibiting discrimination against pregnant women by employers, is the most pertinent of these sections here.

Apart from these various insertions of the term "pregnancy" or its variant into pre-existing portions of the LAD, the PWFA added a detailed new provision, subsection (s), which focuses upon pregnancy discrimination in the workplace and principles of reasonable accommodation. Subsection (s) reads in full as follows:

> s. [It shall be an unlawful employment practice] [f]or an employer <u>to treat, for employment-related purposes, a woman employee that the employer knows, or should know, is affected by pregnancy or breastfeeding in a manner less favorable than the treatment of other persons not affected by pregnancy or breastfeeding but similar in their ability or inability to work</u>. In addition, an employer of an employee who is a woman affected by pregnancy <u>shall make available to the employee reasonable accommodation in the workplace</u>, such as

17

bathroom breaks, breaks for increased water intake, periodic rest, assistance with manual labor, job restructuring or modified work schedules, and temporary transfers to less strenuous or hazardous work, for needs related to the pregnancy when the employee, based on the advice of her physician, requests the accommodation, unless the employer can demonstrate that providing the accommodation would be an undue hardship on the business operations of the employer. The employer shall not in any way penalize the employee in terms, conditions or privileges of employment for requesting or using the accommodation. Workplace accommodation provided pursuant to this subsection and paid or unpaid leave provided to an employee affected by pregnancy shall not be provided in a manner less favorable than accommodations or leave provided to other employees not affected by pregnancy but similar in their ability or inability to work. This subsection shall not be construed as otherwise increasing or decreasing any employee's rights under law to paid or unpaid leave in connection with pregnancy.

For the purposes of this section "pregnancy" means pregnancy, childbirth, or medical conditions related to pregnancy or childbirth, including recovery from childbirth.

For the purposes of this subsection, in determining whether an accommodation would impose undue hardship on the operation of an employer's business, the factors to be considered include: the overall size of the employer's business with respect to the number of employees, number and type of facilities, and size of budget; the type of the employers operations, including the composition and structure of the employer's workforce; the nature and cost of the accommodation needed, taking into consideration the availability of tax credits, tax deductions, and outside funding; and the extent to which the accommodation

18

would involve waiver of an essential requirement of a job as opposed to a tangential or non-business necessity requirement.

[N.J.S.A. 10:5-12(s) (emphasis added).]

The first sentence of subsection (s) reinforces the statute's equal treatment mandate, by making it an unlawful practice for an employer to treat a pregnant or breastfeeding employee "in a manner less favorable than the treatment of other persons . . . [who are] similar in their ability or inability to work." Ibid. By declaring pregnant workers to be a protected class under the LAD, the statute affords them all the LAD's general protections, including its robust range of remedies and protections from retaliation or reprisal.

## 2. The "Reasonable Accommodation" Mandate

The provisions that follow the first sentence of subsection (s) prescribe that employees in New Jersey "shall make available" to pregnant employees "reasonable accommodation." Ibid. Those accommodations can include, as subsection (s) recites, such measures as bathroom breaks, water breaks, periodic rest, assistance with manual labor, job restructuring, modified work schedules, or "temporary transfers to less strenuous or hazardous work." Ibid. Such measures are warranted "when the employee, based on the advice of her physician, requests the accommodation." Ibid. By prescribing such reasonable accommodation, the PWFA goes beyond federal law in aiding pregnant workers.

19

### 3. The "Penalty" Prohibition

The statute further declares that an employer "shall not in any way penalize the [pregnant] employee in terms, conditions or privileges of employment for requesting or using the accommodation." Ibid. The statute does not define, however, what might constitute such an unlawful "penalty," a concept we will discuss, infra.

### 4. The "Undue Hardship" Exception

An employer's duty under subsection (s) to provide a reasonable accommodation is qualified by an "undue hardship" exception. The statute enumerates factors to determine whether providing a requested accommodation would impose an undue hardship on the employer's business. Those factors include: the business's overall size, the number of employees, the number and type of the employer's facilities and the size of its budget, the business's type of operations, the composition and structure of its workforce, and the nature and cost of the accommodation, bearing in mind the availability of tax credits and deductions. Ibid. The PWFA also requires consideration of "the extent to which the accommodation would involve waiver of an essential requirement of a job as opposed to a tangential or business necessity requirement." Ibid.

Reiterating the earlier principle of equal treatment, subsection (s) also mandates that accommodations provided to a pregnant worker "shall not be

20

provided in a manner less favorable than accommodation or leave provided to other employees" who are unable to perform their usual jobs for reasons other than pregnancy. Ibid.

## III.

With these major facets of the PWFA in mind, we examine the trial court's order granting summary judgment to defendants dismissing plaintiff's claims in their entirety and denying plaintiff's cross-motion.

In reviewing these summary judgment rulings, we adhere to customary principles under Rule 4:46 and case law. In particular, we review the record in a light most favorable to the non-moving party, and giving that party all reasonable inferences from the facts. R. 4:46-2; see also Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). In reviewing the same written record as the motion judge, we do not afford the judge's decision any special deference, since no witnesses testified and no credibility findings were made. See W.J.A. v. D.A., 210 N.J. 229, 237-38 (2012).

Plaintiff and the two employee-rights amici organizations who have weighed in on her side in this appeal[5] argue the trial court's decision should be overturned. They contend there are genuine issues of material fact on her claim of an unlawful

---

[5] Those two amici are the National Employment Lawyers Association of New Jersey ("NELA-NJ"), and the New Jersey Association for Justice ("NJAJ").

21

denial of a reasonable accommodation. Plaintiff and the employee-sided amici further maintain the Township's policies requiring pregnant employees to deplete their accumulated leave time in order to obtain an accommodation comprises an unlawful "penalty" under the statute. Plaintiff and the NJAJ also urge that we reverse the denial of partial summary judgment on her facial challenge, which is based on unequal treatment under the Department's two SOP policies.

Conversely, defendants and the employer-aligned amicus[6] contend that we should affirm the trial court's ruling. They assert that, even viewing the record in a light most favorable to plaintiff, she has no viable claims under the PWFA. They insist that plaintiff was not treated unequally. They further maintain that she was not entitled to receive an accommodation, because she admitted she could not perform the essential functions of a police officer during the later phases of her pregnancy.

Additionally, defendants and the ANJMA contend plaintiff was not penalized. They assert the light-duty assignment she was given was not an accommodation, but instead the Township's gratuitous creation of a wholly different job for which a "quid pro quo" of loss-of-leave-time was justified.

---

[6] That amicus is the Academy of New Jersey Management Attorneys ("ANJMA").

A-2899-17T4

Lastly, the Attorney General[7] argues as an amicus that summary judgment was improvidently granted in favor of defendants because there are numerous genuine issues of material fact respecting whether they violated the PWFA. The Attorney General's legal arguments in interpreting the PWFA are substantially consistent with those of plaintiff, the NJAJ, and the NELA-NJ.[8]

## A.

We first consider plaintiff's claims of unequal treatment. Viewing the record in a light most favorable to plaintiff, it is clear that defendants were not entitled to summary judgment on this claim and that, on the other hand, plaintiff's facial challenge is valid.

As we have noted, the Maternity SOP Policy is less favorable than the Light-Duty SOP in a critical respect. The latter policy, unlike the maternity policy, allows the Police Chief for certain officers to waive the requirement that the officer receiving this benefit must deplete his or her accumulated bank of

---

[7] "Although we are not bound to adopt the Attorney General's position, we give due deference to the Attorney General as the legal adviser to State Government, see N.J.S.A. 52:17A-4(e), and also because of the Attorney General's institutional role in enforcing the NJLAD and in overseeing the Division of Civil Rights, N.J.S.A. 10:5-8." Calabotta v. Phibro Animal Health Corp., 460 N.J. Super. 38, 66 n.11 (App. Div. 2019); Quarto v. Adams, 395 N.J. Super. 502, 513 (App. Div. 2007) (recognizing the Attorney General's interpretation of a statute is entitled "to a degree of deference" because of his or her "special role as the sole legal adviser to most agencies of State Government").

[8] We thank all the amici for their helpful participation in this appeal.

23

leave time.[9]   The trial court underestimated the significance of this key

difference in its oral decision declaring the policies to be "neutral."

Plaintiff has identified at least one nonpregnant patrolman and one

nonpregnant sergeant who reportedly obtained from the Police Chief such a

waiver on light-duty without having to use up their accumulated leave time.

Although the defense disagrees with her contentions about those other

employees, that as-applied factual dispute must be resolved by a jury.

In any event, the two written policies are clearly unequal[10] on their face.

No pregnant officers (no matter what positions they hold) can obtain a waiver,

---

[9]  The waiver may be available where the Police Chief finds:

> 1.  The officer's current full-time assignment is
> necessary for the efficient operation and function of the
> department.
>
> 2.  That an extended leave by the officer would be a
> detriment to department operations.
>
> 3.  The officer's condition does not prevent him or her
> from  performing  all  the  daily,  routine  duties
> commensurate with his or her position.

[10]   It might be contended that the loss-of-leave-time conditions of both the
Maternity SOP and the Light-Duty SOP disadvantage officers in the Department
with more experience who have more accumulated leave time.  For instance, a
rookie officer with little or no accumulated time would be able to receive a less
strenuous assignment without much sacrifice, as compared with a veteran officer
who has more to lose.  We do not have that potential issue of inequity before us
in this case, but our opinion should not be interpreted by its silence to mean that
we are endorsing the differential impact.

24

whereas some nonpregnant officers can, in the Police Chief's discretion. The facial difference supports plaintiff's requests for declaratory and injunctive relief. The denial of partial summary judgment on that facial challenge is consequently reversed. On remand, the trial court shall fashion the specific terms of that relief.

It is less clear, however, whether the facial difference between the two SOPs proximately caused plaintiff, who never had the chance to apply for a waiver, any damages. The damages question is reserved for trial.

Furthermore, plaintiff has adduced factual contentions of retaliation and disparate treatment in defendants' implementation of her modified assignment. Among other things, she alleges she was unfairly assigned to "walk-in" and was otherwise treated detrimentally after she requested to be placed on light-duty. Again, these are fact questions to be sorted out by a jury.

In sum, these matters require the summary judgment order in favor of defendants on the unequal treatment claim to be vacated, and to reinstate plaintiff's as-applied claims of unequal treatment.

## B.

We turn to plaintiff's claim that defendants unlawfully failed to provide her with a reasonable accommodation during her second pregnancy. The trial court did not expressly address this discrete claim in its oral ruling.

25

An employer's obligation to provide reasonable accommodation, as set forth in the PWFA, largely derives from general concepts of reasonable accommodation that have been well developed in disability law. Under the federal Americans With Disabilities Act ("ADA"), an employer is liable for "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual who is an applicant or employee," unless the accommodation would impose an undue hardship on the defendant's business operations. 42 U.S.C.A. § 12112(b)(5)(A); see also Victor v. State, 203 N.J. 383, 411 (2010) (quoting and relying upon that ADA provision). Although the term "reasonable accommodation" is not defined within the text of the LAD, our Supreme Court in Victor declared that "[a]ffording persons with disabilities reasonable accommodation rights is consistent with the LAD's broad remedial purposes[.]" Id. at 412; see also Royster v. State Police, 227 N.J. 482, 499-500 (2017) (describing and applying the reasonable accommodation requirement in an LAD disability case); Raspa v. Gloucester County Sheriff's Office, 191 N.J. 323, 339-42 (2007) (same).

Generally, a plaintiff in an LAD disability case alleging an employer's failure to provide a reasonable accommodation must establish these elements: "(1) the plaintiff had a disability; (2) the plaintiff was able to perform the essential functions of the job; (3) the employer was aware of the basic need for

26

an accommodation; and (4) the employer failed to provide a reasonable accommodation." Royster, 227 N.J. at 500; see also Victor, 203 N.J. at 410, 421.

As the Supreme Court recently recognized in Caraballo v. Jersey City Police Dept., 237 N.J. 255, 268 (2019), the Division of Civil Rights has adopted a regulation, N.J.A.C. 13:13-2.5(b)(1), which provides illustrative examples of reasonable accommodations in LAD disability cases. They include such measures as:

> i. Making facilities used by employees readily accessible and usable by people with disabilities;
>
> ii. Job restructuring, part-time or modified work schedules or leaves of absence;
>
> iii. Acquisition or modification of equipment or devices; and
>
> iv. Job reassignment and other similar actions.
>
> [Ibid.]

Such accommodations "'are all designed to make certain changes in the work environment or structuring of employees' time that will allow disabled employees to remain at work without their physical hardships impeding their job performances.'" Caraballo, 237 N.J. at 268 (quoting Jones v. Aluminum Shapes, Inc., 339 N.J. Super. 412, 426-27 (App. Div. 2001)).

27

In LAD disability cases, our courts have construed the notion of "reasonable accommodation" as entailing an employer's duty to accommodate the "physical disability" of a disabled employee, and not a "duty on the part of the employer to acquiesce to the disabled employee's requests for certain benefits or renumeration." Jones, 339 N.J. Super. at 426; see also Caraballo, 237 N.J. at 268 (quoting with approval this passage); Raspa, 191 N.J. at 339 (same).

Defendants argue they were not obligated under the PWFA to provide plaintiff with a reasonable accommodation because, when she requested a less strenuous assignment, she acknowledged that her physician had advised she could not perform the functions of a police officer during the latter phase of her pregnancy.

Defendants contend this is a critical admission by plaintiff that she would no longer be able to perform the essential functions of her job, which is a required element of a LAD disability case. They argue plaintiff did not ask for an accommodation that would enable her to continue to function as a patrol officer, such as, say, an afternoon schedule that would allow her to deal with pregnancy-related morning sickness. Instead, as defendants assert, plaintiff asked for a fundamentally different non-patrol assignment in the police station.

28

By her own admission, she could no longer safely carry a gun, which apparently is an essential requirement of an officer working on patrol in the Township.[11]

Defendants' "no duty to accommodate" argument is unpersuasive for several reasons. First, it does not overcome the important distinction between an accommodation that is temporary in nature – during the period while a pregnant employee transitions to childbirth – versus a permanent accommodation that enables an employee to perform her usual job functions on an ongoing and permanent basis.

This conceptual distinction was recognized by the Supreme Court in Raspa, where an employer provided light-duty work assignments to employees who had a short-term inability to perform the essential functions of their usual positions. As the Court described it, "[t]he light duty positions were not intended to be a permanent post, but a temporary way station or bridge between an inability to work due to injury and a return to full employment status." 191 N.J. at 340. The disabled plaintiff in Raspa claimed he was entitled to keep such a light-duty position on a permanent basis. The Court rejected that claim, explaining that the light-duty assignment was "intended as a shield to protect

---

[11] The parties have not supplied us with a written job description for a patrol officer in the Township, nor any general civil service job description that spells out the officer's duties and qualifications. Even so, it is not disputed here that the ability to carry a gun is one of a patrol officer's essential functions.

29

the temporarily disabled, and not as a sword by which a person who is otherwise unqualified for the position can demand a permanent posting." Ibid. The Court held that "the LAD does not require that an employer create a permanent and indefinite light duty position for a permanently disabled employee if the employee's disability, absent a reasonable accommodation, renders him [or her] otherwise unqualified for a full-time, full-duty position." Ibid. (emphasis added).

The PWFA adopts this sensible conceptual distinction between permanent accomodations and temporary accommodations for pregnant workers. It expressly recognizes that, among things, a reasonable accommodation for a pregnant employee can include "temporary transfers to less strenuous or hazardous work." N.J.S.A. 10:5-12(s). The statute thus contemplates that female workers near the end of their pregnancies may temporarily be unable to perform certain essential physical tasks inherent in their regular jobs, but nonetheless have a right to obtain (subject to the employer's undue hardship exception) a transfer to a temporary different assignment that is "less strenuous or hazardous." Ibid. This short-term reassignment for a pregnant worker is akin to the "temporary way station" described in Raspa.

In addition, the Department's Maternity SOP requires a pregnant officer seeking less strenuous or dangerous responsibilities to "submit a doctor's note

30

acknowledging that the officer is pregnant and that it is recommended that the officer no longer perform the duties of her current full-time assignment." This mandated acknowledgment should not be treated as a waiver of a pregnant woman's rights to a reasonable accommodation under the PWFA. The SOP does not state that making such a request forfeits the employee's statutory rights under the PWFA, even assuming such a notice would be enforceable.

Although it is not labeled as such, the Department's Maternity SOP essentially operates as an accommodation measure for pregnant officers. It is designed to offer a female officer who is nearing the end of her pregnancy and who has physical limitations the opportunity to continue to work in a less strenuous or dangerous assignment and still earn a paycheck. The assignment is a temporary way station that bridges the continued employment of the pregnant employee who needs a workplace accommodation until her child is born.

If the Department did not already have such a policy in place, plaintiff would have a right under the PWFA to obtain some form of temporary accommodation, subject to an employer's undue hardship defense. That right of accommodation is in accord with the strong policy objectives of the PWFA expressed by the Legislature in Section 3.1 of the statute.

31

## C.

The question then arises as to whether the Maternity SOP is a "reasonable" accommodation. This is a hotly contested question. Plaintiff argues that the Maternity SOP is unreasonable because it requires her to deplete accumulated leave time as a condition of receiving the temporary assignment. Defendants counter that the loss-of-leave-time condition is a reasonable exchange for the Department creating less strenuous positions that would not otherwise be needed, and to save taxpayer funds.

The trial court did not grapple with this question, at least not explicitly, because it was persuaded the PWFA would not be violated so long as pregnant employees and nonpregnant workers were treated in equal fashion. The court reasoned that both pregnant officers under the Maternity SOP and nonpregnant injured officers under the Light-Duty SOP generally have to use up accrued leave time in order to receive a modified assignment. The court's analysis is flawed, however. For one thing, as we have already spotlighted, the Light-Duty SOP contains a valuable waiver pathway that is not contained in the Maternity SOP.

Moreover, even if the Maternity SOP and Light-Duty SOP had identical terms, plaintiff still might have a viable claim under the PWFA if those terms

32

and conditions were "unreasonable" or imposed an unlawful "penalty" on the employee. Mere equivalency might not be enough to comply with the statute.

For instance, suppose the SOPs each imposed a harsh consequence upon the pregnant or nonpregnant employee who requested a less strenuous assignment. Assume that harsh consequence was, say, requiring the officer against his or her wishes to cover holidays or other undesirable patrol shifts upon his or her return to work (assuming union rules did not prohibit that scheduling practice). The employer might assert this scheduling is justified because other employees undertook the patrol officer's functions during his or her absence. Without deciding the hypothetical issue here, a pregnant plaintiff might plausibly argue that imposing such a burden upon her as a condition of obtaining a temporary reassignment is so onerous as to make the accommodation policy "unreasonable" or a "penalty" disallowed by the statute.

The statute does not define what comprises a reasonable accommodation or, for that matter, when any conditions attached to the accommodation become a prohibited penalty. Some guidance is supplied by generic disability laws and regulations.

In particular, N.J.A.C. 13:13-2.5 describes a "reasonable accommodation" as a concept that "must be assessed on an individual basis." N.J.A.C. 13:13-2.5(a). The regulation also states that "[t]he determination of whether an

33

employer has failed to make reasonable accommodation will be made on a case-by-case basis." N.J.A.C. 13:13-2.5(b). An informal "interactive process" is customarily necessary to address the employee's "precise limitations" resulting from the disability. Tynan v. Vicinage 13 of the Superior Court, 351 N.J. Super. 385, 400 (App. Div. 2002) (citing 26 C.F.R. § 1630.2(O)(3)). The employer must make a "good faith effort to assist the employees in seeking accommodation." Ibid.

Similar principles logically should be extended to an employer's obligation to provide a reasonable accommodation under the PWFA. In many (but not all) instances, including the present case, the question of reasonableness is one best evaluated by a jury. In that vein, our courts already have a model civil jury charge to guide jurors in assessing whether or not an employer's accommodation efforts or policies are reasonable. Model Jury Charges (Civil), "Failure to Accommodate Employee with Disability Under the New Jersey Law Against Discrimination" (rev. Feb. 2018).

Here, jurors should evaluate whether the Department's loss-of-leave-time policy is a reasonable and fair condition of the pregnant worker receiving a less strenuous temporary maternity assignment while remaining on the Department's payroll. The jurors would be guided in this regard by customary notions of the "reasonable person" standard, just as they are often called upon to evaluate in

34

negligence cases. The jury should also examine all disputed factual issues relating to damages, such as whether plaintiff, as she alleges, could have feasibly performed her maternity assignment up to her actual due date.

We cannot and do not rule in this appeal upon whether the Department's loss-of-leave-time policy is either reasonable or unreasonable. Summary judgment for defendants must be vacated, and the question of reasonableness determined by the jurors as fact-finders.

D.

Plaintiff, the NELA-NJ, and the Attorney General have all argued that the PWFA's inclusion of a prohibition on "penalizing" a pregnant employee who seeks an accommodation has independent meaning beyond what is merely unreasonable. A common dictionary definition of a "penalty" connotes "[a] punishment." Webster's II New College Dictionary 812 (1999). The legislative history of the PWFA we have reviewed is unenlightening on the subject. At the very least, the term presumably disallows retaliation by an employer against an employee who requests an accommodation. Beyond that, we cannot tell exactly what the Legislature had in mind by using the term.

Traditional principles of statutory construction require courts to attempt to imbue meaning to all words used in a statute. See, e.g., Brugaletta v. Garcia, 234 N.J. 225, 248 (2018). We also recognize that our courts have construed the

35

LAD, of which the PWFA is now a part, expansively "in order to achieve its beneficial purpose." Nini v. Mercer Cty. Cmty. College, 202 N.J. 98, 115 (2010). In addition, subsection (s) broadly instructs that the pregnant employee cannot be penalized "in any way." N.J.S.A. 10:5-12(s).

We cannot say definitively or precisely what the term "penalize" signifies in the PWFA, other than to say, as the Attorney General and others argue, the term appears to disallow employer-imposed conditions on accommodations that are especially harsh. We respectfully refer the subject to the Model Civil Jury Charge Committee to develop an appropriate jury instruction on the subject. Alternatively, the Division on Civil Rights is free to promulgate a regulation on the subject. For the present, we decline to resolve whether defendants' loss-of-leave-time requirement unlawfully "penalizes" pregnant officers and instead defer that assessment to a jury.

E.

All that said, another important jury question here is whether invalidation of the loss-of-leave-time condition, as plaintiff requests, would cause the Township or the Department an "undue hardship." See N.J.S.A. 10:5-12(s). Here again, general disability law can furnish some guidance. An "undue hardship" can entail an employee' fiscal or operational concerns, or both. On this subject, N.J.A.C. 13:13-2.5, which addresses reasonable accommodation

36

under the LAD, instructs that "[i]n determining whether an accommodation would impose undue hardship on the operation of a business," these four factors are to be considered:

> i. The overall size of the employer's business with respect to the number of employees, number and type of facilities, and size of budget;
>
> ii. The type of the employer's operations, including the composition and structure of the employer's workforce;
>
> iii. The nature and cost of the accommodation needed, taking into consideration the availability of tax credits and deductions and/or outside funding; and
>
> iv. The extent to which accommodation would involve waiver of an essential requirement of a job as opposed to a tangential or non-business necessity requirement.

Subsection (s) of the LAD, which addresses undue hardship under the PWFA, uses virtually identical language.  N.J.S.A. 10:5-12(s).

A fair and thorough weighing of these multi-factored considerations in the present case requires the presentation of witness testimony and other trial evidence and assessment by a trier of fact.  We cannot determine on the existing record whether defendants can establish an undue hardship.  The trial court did not pass upon the issue.  The issue is remanded for trial, along with the other jury issues we have identified.[12]

---

[12] We are mindful there are only three female police officers in the Department, which might suggest the burden of further accommodating any pregnant officers

37

Reversed in part, vacated in part, and remanded.  We do not retain jurisdiction.[13]

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

in the Maternity SOP by eliminating the loss-of-leave-time condition may be modest. However, the Department may wish for parity to modify its Light-Duty SOP in a similar manner, which could have more substantial impacts on the Department as a whole.

[13] We do not resolve here whether any of the individual named defendants are entitled to dismissal.  It appears their appropriate status in the case can be better evaluated at the time of the trial.  We provide no advisory opinion about the merits of their alleged individual liability.

A-2899-17T4